ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| GIOVANNY A. CRUZ RIVERA y/o ANDRESSE R. COLÓN MONTES<br><br>Parte Recurrida<br><br>v.<br><br>**AUTOMOBILI, CORP. D/B/A AVILÉS AUTO**<br><br>TOCARS VEGA BAJA LLC H/N/C TOCARS TOYOTA TOYOTA DE PUERTO RICO CORP. POPULAR AUTO LLC<br><br>Parte Recurrente | KLRA202300571 | *Revisión de Decisión Administrativa* procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.: SAN-2022-0011772<br><br>Sobre: Compraventas de Vehículos de Motor |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Rodríguez Flores, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de agosto de 2024.

La parte recurrente, Automobili Corp. h/n/c Avilés Auto (Avilés Auto o parte recurrente) solicita que revoquemos la *Resolución en Reconsideración*[1] notificada por correo postal el 2 de octubre de 2023, por el Departamento de Asuntos del Consumidor (DACo o agencia recurrida). En el referido dictamen, el DACo mantuvo su decisión de declarar con lugar la querella, decretó la nulidad del contrato de compraventa suscrito por Avilés Auto y el Sr. Giovanny A. Cruz Rivera (Sr. Cruz Rivera o parte recurrida), ordenó la restitución de las prestaciones e impuso a Avilés Auto el pago de honorarios de abogado.

---

[1] En el presente caso el **Lcdo. David Sánchez Rosario**, Juez Administrativo, fue el que celebró la vista administrativa y emitió la Resolución del caso el 4 de agosto de 2023. Ante solicitud de reconsideración del querellado y réplica del querellante, DACo emitió la Resolución en Reconsideración recurrida, la cual fue emitida y suscrita por la **Lcda. Mildred López Pérez**.

Evaluado el escrito de revisión judicial, la oposición y los documentos que conforman los apéndices, así como la transcripción de la vista administrativa celebrada, se revoca la resolución recurrida. Se desestima la querella instada por el Sr. Cruz Rivera.

**I.**

El **18 de junio de 2021**, el Sr. Cruz Rivera compró en Avilés Auto de Caguas un vehículo de motor usado, marca Toyota, modelo C-HR de 2018, tablilla IWR087, número de serie NMTKHMBX5JR001757. Al momento de la compra, el vehículo tenía 35,574 millas recorridas. El vehículo fue adquirido a través de Popular Auto, LLC, quien financió la compra. El Sr. Cruz Rivera pagó al Departamento de Hacienda $10.00 por el traspaso del vehículo y permiso provisional de licencia.

Al momento de adquirir la unidad, el Sr. Cruz Rivera detectó unos detalles superficiales[2] que el vendedor de Avilés Auto acordó reparar posteriormente en gestiones de mantenimiento.

El Sr. Cruz Rivera llevó el automóvil a Avilés Auto para las gestiones de mantenimiento acordadas.[3] A la unidad le cambiaron solo dos (2) gomas y acordaron que, posteriormente, se realizaría el cambio de las otras dos gomas, el arreglo del parabrisas y las luces interiores.[4] Sin embargo, las gestiones del Sr. Cruz Rivera para que Avilés Auto cumpliera con lo acordado resultaron infructuosas.[5]

Posteriormente, la unidad comenzó a hacer ruidos en la parte delantera al girar el guía y el aire acondicionado dejó de enfriar. El Sr. Cruz Rivera notificó los defectos a Avilés Auto.

Ante la falta de respuesta, el **10 de marzo de 2022**, el recurrido llevó el vehículo a Tocars Vega Baja, LLC h/n/c Tocars

---

[2] El Sr. Cruz Rivera verificó el vehículo por fuera, no revisó el motor o el carro por debajo. Este notó que el vehículo tenía las cuatro gomas gastadas, los limpiabrisas *(wipers)* dañados y las luces interiores dañadas. Véase, alegato de la parte recurrida, pág. 2.

[3] Avilés Auto no cuenta con taller de servicio, por lo que las gestiones de servicio y mantenimiento se realizaban en un taller cercano al concesionario.

[4] Véase, Alegato de la parte recurrida, página 3.

[5] Véase, Apéndice X del recurso.

Toyota, donde le realizaron un diagnóstico. Para ese entonces el vehículo tenía **45,724 millas** recorridas. El diagnóstico[6] detalla lo siguiente:

> A- C/I UNIDAD AL GIRAR EL GUÍA PARA AMBOS LADOS HACE RUIDO
>
> CAUSE: EXCESSIVE WEAR
>
> [...]
>
> SE REALIZÓ DIAGNÓSTICO SE ENCONTRÓ AMBOS EJES DELANTEROS CON DESGASTE EXCESIVO EN CAJAS DE BOLO OCASIONANDO RUIDO AL GIRAR. SE PROCEDIÓ A RE[E]MPLAZAR AMBOS EJES COR[R]IGIENDO CONDICIÓN.
>
> B- C/I UNIDAD NO ENFRÍA
>
> [...]
>
> *SE REALIZÓ DIAGNÓSTICO SE ENCONTRÓ CONDENSADOR IMPACTADO EN PARTE BAJA OCASIONANDO FUGA Y COMPRESSOR* (SIC) *CON DAÑO INTERNO. UNIDAD NO TIENE LOS BRACKET DE BATERÍA.*

El **29 de abril de 2022**, el Sr. Cruz Rivera nuevamente llevó el vehículo a Tocars por ruidos en la parte frontal. Para ese entonces el vehículo tenía **49,844 millas** recorridas. El diagnóstico[7] detalla lo siguiente:

> A C/I RUIDO EN EL TREN DELANTERO COTIZAR TODOS SUS COMPONENTES.
> [...]
>
> *SE REALIZÓ INSP[ECCIÓN] VISUAL SE ENCONTRÓ QUE VEHÍCULO FUE IMPACTADO EN PARTE FRONTAL EL MISMO TUVO TRABAJO DE HOJALATERÍA REALIZADO* REQUIERE RE[E]MPLAZO DE CONDENSADOR POR IMPACTO Y COMPRESSOR (SIC) POR DESGASTE INTERNO AL IGUAL QUE RE[E]MPLAZAR TODOS LOS *LINERS* TORNILLERÍA Y BATERÍA.
>
> B INSPECCIÓN DE 160 PUNTOS
>
> [...]
>
> *SE LE ORIENT[Ó] QUE DEBE DEJAR LA UNIDAD. CASO DA CO (SIC) ESTE EN ESTIMADO.*

El **1 de agosto de 2022**, el Sr. Cruz Rivera acudió ante el DACo y presentó una querella contra Avilés Auto.[8] En esta, alegó que Avilés Auto no le informó que la unidad había sido impactada previo a la compraventa y que tenía "daños ocultos". Señaló que de haber sabido que el vehículo había sido chocado no lo hubiera

---

[6] Véase Apéndice XVII del recurso.
[7] Véase Apéndice XVIII del recurso.
[8] Véase Apéndice VI del recurso.

comprado, que se siente engañado. Por ello, solicitó la "resolución" del contrato, el reembolso del monto pagado, una indemnización en daños y la liberación de las penalidades pactadas.

El 18 de agosto de 2022, Avilés Auto contestó la querella. En esencia, negó las alegaciones del Sr. Cruz Rivera y levantó varias defensas afirmativas. Entre estas, Avilés Auto alegó que ha cumplido con todas sus obligaciones contractuales, que no ha tenido oportunidad razonable para diagnosticar y reparar el vehículo de motor, que este no adolece de vicios ocultos de manufactura, ensamblaje o diseño y que, de tener algún defecto o vicio, lo cual negaba expresamente, desconocía su existencia y, por tanto, obró de buena fe. Añadió que la unidad vendida se encuentra en perfecto estado mecánico y que la querella se presentó de forma temeraria. Por último, se reservó el derecho a enmendar su contestación a la querella y a plantear cualquier defensa afirmativa que surgiera como resultado del descubrimiento de prueba.

Las partes fueron citadas a una inspección, que se realizó el **25 de octubre de 2022** en las instalaciones de Avilés Auto. Comparecieron todos los involucrados.[9] El técnico de investigación del DACo, José H. Aponte Ortiz, rindió un informe el cual fue notificado a las partes el 16 de noviembre de 2022.[10] La Parte IV de dicho informe, contempla los siguientes resultados de la inspección:

*Condiciones del vehículo según las alegaciones de la querella*

- Luz de la visera del lado Izquierdo no prende.

- Los "wiper" no limpian correctamente.

- Lo que comprenden las partes que presentaban ruido en el tren delantero **fueron corregidas** en garantía por Tocars Toyota.

- El Aire Acondicionado no enfría.

---

[9] Estuvo presente el querellante, el Sr. Carlos Acevedo, representante de servicio Toyota, el Sr. Miguel Rangel, representante legal de Toyota, el Sr. Ricardo de los Ángeles, Gerente General de Avilés Auto Sales de Caguas y el Sr. Eric Falero, Gerente de Servicio de Tocars Toyota de Vega Baja. Véase, apéndice IX del recurso.

[10] El inspector, Sr. Aponte Ortiz, es Técnico Automotriz con licencia número TA19169.

- Los tapalodos presentan desperfectos en la pintura como de contacto con el bonete del vehículo en las esquinas.

En la Parte V del informe, el investigador consignó lo siguiente:

### V. OPINIÓN
#### Opinión del perito

- Se debe diagnosticar bajo las especificaciones de Toyota, todo lo relacionada (sic) al circuito eléctrico que causa el desperfecto de la luz de la visera para poder corregir dicha condición.

- Se deben reemplazar ambos "Wiper".

- Cualquiera de las piezas defectuosas que fueron indicadas por el representante Tocars Toyota, cuando tuvieron la oportunidad de verificarlo y hacer estimado en su concesionario, tanto el compresor, como el condensador del Aire Acondicionado, **pueden ser** causantes del desperfecto que presenta el vehículo con relación a este sistema.

- Los desperfectos que presenta la pintura en los tapalodos sugieren algún tipo de descuadre de estas piezas **posiblemente a causa** de un impacto sufrido en la parte frontal del vehículo.

Nota: El Dealer Tocars Toyota Vega Baja detect[ó] un golpe frontal en el vehículo, que a su vez indican esto causa los desperfectos que presenta este en el aire acondicionado. No obstante, si se determinara pertinente realizar otra inspección del vehículo[,] [s]e sugiere por este que suscribe se lleve a cabo en el concesionario Tocars Toyota para poder contar con los equipos y herramientas aprobadas por Toyota y de una forma segura corroborar los hallazgos de Tocars Toyota por parte de este departamento.

(Énfasis nuestro).

En la Parte VI del informe, el perito expuso varias observaciones. En lo aquí pertinente, señaló lo siguiente:

[…]

*El representante de Tocars Toyota Auto indica que el vehículo presenta desperfectos con lo relacionado al aire acondicionado ya que, al desarmar al área necesaria para alcanzar las partes del aire acondicionado, pudieron detectar que el vehículo presenta un golpe frontal que caus[ó] estos desperfectos[.] también indican que entregaron estimado de esto al querellante.*

[…]

*El querellante indica que tuvo que comprar las gomas que en Avilés Auto no le compraron después de habérselas prometido. Indica entiende también que Toyota de Puerto Rico no tiene que ver con lo alegado en la querella y las alegaciones de engaño y Vicios Ocultos están dirigidas a Avilés Auto. Solicita la cancelación del contrato y devolución del dinero,*

*debido a los desperfectos que presenta el vehículo y lo del choque frontal "Vicio Oculto" que fue detectado por Tocars Auto.*

***Al momento de realizada esta inspección, Avilés Auto no tiene área de servicio, equipo, ni herramientas para subir el vehículo, desarmar lo necesario y poder detectar el alegado choque que causa los desperfectos del vehículo para poder completar la inspección visual****.*

*El Representante de Tocars Toyota[,] Sr. Falero indica que, aunque ya ellos hicieron el estimado de daños a causa del choque frontal detectado, están en disposición de ver una inspección en su dealer de ser necesario ya que cuentan con todo el equipo necesario para llevarla a cabo.*

*Se somete el informe para una vista administrativa por solicitud de la parte querellante, o lo que se entienda pertinente.*

(Énfasis suplido).

Del expediente no surge que las partes hubiesen objetado el informe suscrito por el técnico de investigación.

Posteriormente, el **21 de abril 2023**, el Sr. Cruz Rivera enmendó su querella. Solicitó la nulidad del contrato de compraventa por dolo, fundado en que Avilés Auto le ocultó que el vehículo había sido chocado y reparado previo a la contratación. A su vez, el Sr. Cruz Rivera reiteró que los desperfectos que presentaba el vehículo constituían vicios ocultos que debieron haber sido informados por Avilés Auto y que, de haber conocido que la unidad había sido chocada, no la hubiera comprado. Adujo que los vicios ocultos disminuyeron el valor de la unidad y que la misma se pudiera usar adecuadamente. Por último, esgrimió y reclamó la devolución de todos los gastos incurridos, más la cantidad de $10,000.00 por daños emocionales que le ocasionó las actuaciones dolosas de Avilés Auto y el pago de $3,000.00 en honorarios de abogado.[11]

El 16 de mayo de 2023, Avilés Auto presentó *Contestación a Querella Enmendada*[12] en la que incorporó todas las defensas afirmativas de su primera contestación y añadió que la acción por vicios ocultos estaba prescrita.

---

[11] Apéndice X del recurso.
[12] Apéndice XII del recurso.

La vista administrativa se celebró el 23 de junio de 2023, ante el Juez Administrativo, Lcdo. David Sánchez Rosario. Compareció el Sr. Cruz Rivera, acompañado de su representación legal[13]. También comparecieron el Sr. Ricardo Morales Morales, en representación de Avilés Auto; el Lcdo. Jorge Rotger Reyes, en representación de Popular Auto, LLC; el Sr. Carlos Omar Acevedo Ramos y la Lcda. Verónica N. Vélez Acevedo, en representación de Toyota de Puerto Rico y el Sr. Erick Falero Báez, Gerente de servicios y piezas de Tocars Toyota.

Iniciados los procedimientos, el Sr. Cruz Rivera, a través de su representante legal, desistió de la querella en cuanto a Toyota de Puerto Rico.

El primero en testificar fue el técnico de investigación del DACo, Sr. José H. Aponte Ortiz. Este declaró que, en las instalaciones de Avilés Auto, lugar donde se realizó la inspección de la unidad objeto de la querella, no había disponibilidad de un pino para subir el vehículo y hacer una inspección completa. Por tal razón, testificó que no llegó a conclusión alguna en su informe. [14] Respecto a los resultados de la inspección consignados en el documento, específicamente en la Parte IV, último punto, en el que indicó que "los tapalodos presentan desperfectos en la pintura como de contacto con el bonete del vehículo en las esquinas", declaró que ello podía deberse a varias cosas. Así, expresó que "en algún momento se movió esa pieza y se volvió a instalar y no se instaló como fue debido. Tal vez algún golpe que recibió".[15]

A preguntas de la representación legal de Avilés Auto, el técnico de investigación del DACo respondió que, tal y como

---

[13] El co-querellante Andresse R. Colón Monte no compareció a la vista. Lo anterior, a pesar del ser el firmante de las hojas de servicios en TOCARS Toyota. Tampoco compareció a la vista Ruth Cruz Rivera, persona mencionada como contacto en las hojas de servicio de TOCARS Toyota.

[14] Transcripción de la vista administrativa incluida en el apéndice del recurso, pág. 6.

[15] *Íd.,* pág. 7.

describió en las observaciones de su informe, ante la falta de equipo en el lugar de la inspección, no pudo detectar el supuesto choque que presuntamente causó los desperfectos de la unidad.[16]

Luego se procedió con el testimonio del Sr. Cruz Rivera. La falta de especificidad en las fechas de los eventos relatados y la inclusión de hechos adicionales a los alegados en su querella enmendada provocaron objeciones por parte de la representación legal de Avilés Auto, las cuales fueron atendidas y resueltas -con lugar unas y sin lugar otras- por el juez administrativo.[17]

El Sr. Cruz Rivera testificó que la unidad comenzó a manifestar el ruido en la parte frontal, al girar el guía, "como a los dos meses o tres de haber comprado el vehículo" y que, por tal razón, lo dejó de utilizar.[18] Sin embargo, no pudo especificar el tiempo en que la unidad estuvo detenida.[19] Más adelante, tras comentar lo que detallan los estimados de reparación realizados por Tocars respecto a los desperfectos que presenta la unidad, el testigo afirmó que, al momento de la compraventa, Avilés Auto no le informó que el carro había sido chocado y reparado. Puntualizó que, si hubiera sabido que el vehículo fue chocado, no lo hubiera comprado.[20] Sin embargo, a preguntas de su propia representación legal, el Sr. Cruz Rivera manifestó que "he tenido que seguir utilizando [el vehículo] porque pues, eh, no tengo transportación y he estado pues, verdad, anteriormente había gastado mucho dinero en las personas que me transportaban a mi trabajo y no quería seguir perdiendo días de trabajo como anteriormente, eh, eso".[21]

En el contrainterrogatorio, la representante legal de Avilés Auto aludió al *invoice* 20473 del 10 de marzo de 2022 y al *invoice*

---

[16] *Íd.,* pág. 10.
[17] *Íd.,* págs. 16-20, 22-23.
[18] *Íd.,* págs. 18-20.
[19] *Íd.,* pág. 22.
[20] *Íd.,* pág. 26.
[21] *Íd.,* pág. 27.

20959 del 29 de abril de 2022. En respuesta a las preguntas formuladas respecto a dichos documentos, el Sr. Cruz Rivera reconoció que había sido el mismo mecánico quien realizó ambos diagnósticos al vehículo; en el 20473, encontró que el condensador estaba impactado en la parte baja y posteriormente, en el 20959, indicó que el vehículo estaba impactado en la parte frontal. En cuanto al estimado 11721, admitió que este no especifica el vehículo objeto de la evaluación. Por otro lado, el Sr. Cruz Rivera negó que el impacto frontal al vehículo hubiese ocurrido entre el 10 de marzo y el 22 de abril de 2022, plazo durante el cual el auto estaba en su posesión.[22]

Durante el testimonio del Sr. Cruz Rivera se admitió la siguiente prueba documental:

Exhibit 1-Orden de venta de Avilés Auto.

Exhibit 2-Contrato de venta al por menor a plazo de Popular Auto.

Exhibit 3-Licencia del vehículo.

Exhibit 4-Invoice 2000473 de Tocars Toyota.

Exhibit 5-Invoice 200959 de Tocars Toyota.

Exhibit 6-Invoice Q11721 de Tocars Toyota.[23]

Culminados estos testimonios, Avilés Auto optó por no desfilar prueba y presentó una moción verbal de desestimación contra la prueba (*non suit*), fundándose en que, bajo los hechos hasta ese momento probados, el querellante no tenía derecho a la concesión de remedio alguno. El juez administrativo declaró sin lugar la solicitud de desestimación. A continuación, concedió un término a las partes para proveer determinaciones de hecho y derecho y el caso quedó sometido para adjudicación.

---

[22] *Íd.,* págs. 31-32.
[23] Avilés Auto no presentó prueba documental.

El 4 de agosto de 2023, el DACo emitió *Resolución*. En esta, consignó doce (12) determinaciones de hechos, entre las que destacó que ninguna de las partes había presentado propuestas de determinaciones de hecho y de derecho. A la luz de las determinaciones esgrimidas, el DACo concluyó que los Exhibits IV y V[24] claramente demostraban que la unidad había sido impactada por la parte frontal y que se le había realizado un trabajo de hojalatería. Coligió, además, que, del propio testimonio del Sr. Cruz Rivera, surgía que la unidad no había sido impactada mientras estuvo en su posesión. Además, indicó que no se había presentado prueba alguna que demostrara que el querellante hubiera estado involucrado en un accidente que implicara la parte delantera de la unidad. Por ello, el DACo entendió probado que el vehículo fue impactado y reparado previo a que Avilés Auto lo vendiera al Sr. Cruz Rivera.

El DACo resaltó que el *Reglamento de Garantías de Vehículos de Motor,* Núm. 7159 del 6 de junio de 2006, impone a todo vendedor de un vehículo de motor usado que haya sido impactado y reparado posteriormente, indicarlo verbalmente y notificarlo por escrito al consumidor en el contrato de compraventa. Acto seguido, concluyó que la prueba había demostrado que, al momento de la venta, Avilés Auto no le informó al querellante, verbalmente ni por escrito, de la condición del vehículo. Por tanto, el DACo dio paso a la acción de saneamiento por vicios ocultos y coligió que Avilés Auto vendió la unidad al Sr. Cruz Rivera sin haberle notificado que ésta había sido chocada y reparada, incumpliendo así un requisito estatutario para la venta válida de un vehículo de motor usado.[25]

---

[24] El *Invoice* 200473 de Tocars Toyota fue marcado como Exhibit IV y el *Invoice* 200959 de Tocars Toyota como Exhibit V.

[25] En relación con ello, expresó que: "la información de que el carro había sido impactado previamente, era un dato relevante que el concesionario debió divulgar al querellante, antes de que suscribieran el contrato de compraventa. La querellada no llevó a cabo las mínimas diligencias, como la revisión de los reportes de CARFAX o una inspección minuciosa por un técnico automotriz licenciado, que

Sobre el particular, además, la agencia resolvió que el consentimiento del Sr. Cruz Rivera estuvo viciado por falta de información y que Avilés Auto incurrió en dolo. En virtud de lo anterior, la agencia decretó la nulidad del contrato de compraventa y ordenó que Avilés Auto le reembolsara al Sr. Cruz Rivera todas las mensualidades pagadas a Popular Auto. En adición, ordenó a Avilés Auto satisfacer el monto adeudado por el Sr. Cruz Rivera a Popular Auto para relevarlo de la deuda financiera, le impuso $1,000.00 en honorarios de abogado, y le requirió devolver al Sr. Cruz Rivera los $10.00 del traspaso.

Inconforme, el 14 de agosto de 2023, Avilés Auto presentó *Reconsideración y Solicitud de Determinaciones de Hechos Adicionales.*[26] En primer lugar, solicitó que se enmendara la resolución a los efectos de que se incluyeran las determinaciones de hecho que el juez administrativo entendió probados, arguyendo que las determinaciones de hecho consignadas en la resolución consistían en una transcripción literal de lo declarado por cada parte durante la vista administrativa. Además, en reconsideración, solicitó que se desestimara por prescripción la causa de acción por vicios ocultos y que se eliminara la imposición de honorarios por temeridad.

Por su parte, el Sr. Cruz Rivera presentó *Réplica [a] Reconsideración.*[27] En síntesis, expuso que las determinaciones y conclusiones de la resolución eran suficientes para sustentar la determinación de la agencia. No obstante, propuso treinta (30) hechos probados para que estos fueran añadidos como enmienda a la resolución. Evaluados ambos escritos, el 28 de agosto de 2023,

---

le habrían permitido conocer que el vehículo había sido chocado cuando lo adquirió y pudiera así divulgar ese dato al querellante, para que este tomara una decisión informada". Véase, Apéndice I del recurso.

[26] Véase Apéndice II del recurso.

[27] Apéndice III del recurso.

el DACo emitió una orden en la que acogió la solicitud de reconsideración.[28]

Finalmente, el 2 de octubre de 2023, el DACo notificó su *Resolución en reconsideración.*[29]     En esta, enmendó las determinaciones de hecho y conclusiones de derecho de la resolución original.   En lo aquí pertinente, las determinaciones de hechos formuladas por la agencia en la resolución en reconsideración fueron las siguientes:

[…]

5. El día 1 de agosto de 2022 el Querellante radicó la querella de epígrafe donde expuso una causa de acción por saneamiento y dolo, entre otros, solicitando como remedio investigación, resolución del contrato, el re[e]mbolso del dinero íntegro, que se indemnice por los daños ocasionados, por las angustias y liberación de penalidad y/o lo que en derecho proceda.

6. El día 25 de octubre de 2022, tras múltiples trámites procesales, Jos[é] H. Aponte Ortiz, Técnico Automotriz y Técnico de Investigación del Departamento de Asuntos del Consumidor, visitó las facilidades de Avilés Auto donde tuvo la oportunidad de entrevistar a las partes y examinar el objeto de la presente controversia: la unidad abajo descrita.

7. El día 18 de junio de 2021, el Querellante adquirió de Avilés Auto un vehículo de motor usado marca Toyota, modelo C.HR, del año 2018, con número de serie NMTKHMBX5JR001757, color Rojo, con millaje de 53,574 y tablilla IWR087 por la cantidad de $24,995.00 …

8. Al momento de adquirir la unidad arriba descrita, el Querellante encontró unos "detalles superficiales" en la unidad, los cuales se acordó entre la Querellada y este, serían reparados en gestiones posteriores de "mantenimiento", sin embargo, no se le informó de manera verbal ni escrita que la unidad había sido impactada y reparada previo a éste haberla adquirido.

9. En o para el 18 de julio de 2022, el Querellante llamó a la Querellada por unas luces de mantenimiento que se habían encendido en la unidad.  En ese entonces, le proveyeron una cita para auscultar la condición reflejada.  Le realizaron el cambio de dos gomas, así como el aceite y filtro.

---

[28] La *Orden y Resolución en Reconsideración* emitidas por DACo, no fueron atendidas por el Juez Administrativo que presidió la vista administrativa.  Dichos dictámenes fueron atendidos por la Lcda. Mildred López Pérez, Directora Regional de San Juan.
[29] Apéndice V del recurso.

10. En o para el 18 de septiembre de 2022[30], el Querellante notificó a la Querellada de unos ruidos extraños que realizaba el vehículo cada vez que giraba el guía para que revisaran dichos defectos y realizaran el cambio de las gomas delanteras, según convenido por las partes.

11. Entre el 18 de septiembre de 2022 y el 10 de marzo de 2023, el Querellante tuvo que detener el vehículo por razones de seguridad. Mientras tanto, estuvo realizando llamadas al concesionario.

12. El día 10 de marzo de 2023, el Querellante llevó la unidad arriba descrita al taller de Tocars de Vega Baja, quien consignó lo siguiente sobre la misma:

[…]

Se realizó diagnóstico se encontró condensador impactado en parte baja ocasionando fuga y compresor con daño interno. Unidad no tiene los bracket de batería.

13. Entre el 14 de marzo de 2022 y el 29 de abril de 2022, Tocars inform[ó] al Querellante los resultados de los diagnósticos; le indicaron que lo que estaba sonando eran los ejes frontales del vehículo y que la garantía lo cubría, pero que el vehículo había sido chocado y que era su decisión qué hacer con el mismo; pero que, los daños que presentaba, incluyendo los Brackets de la batería, se debían a una mala reparación del choque.

14. El día 29 de abril de 2022, el Querellante llevó el vehículo al taller de Tocars Toyota de Vega Baja, quien consignó lo siguiente:

[…]

Se realizó inspección visual se encontró que vehículo fue impactado en parte frontal el mismo tuvo trabajo de hojalatería realizado requiere re[e]mplazo de condensador por impacto y compresor por desgaste interno al igual que re[e]mplazar todos los liners tornillería y batería. (…).

15. El día 30 de abril de 2022, Tocars Toyota cotizó el trabajo y las piezas que requería la unidad para reparación y óptimo funcionamiento, informando como total de reparación la cantidad de $4,010.07.

16. El día 16 de noviembre de 2022, **José H. Aponte Ortiz, Técnico Automotriz y de Investigación del DACO,** notificó a las partes su Informe de Inspección, el cual fue objetado el mismo día por Automobili, quien, entre otros asuntos, requirió la presencia del "Técnico"

---

[30] Las determinaciones de hechos 10 y 12 reflejan inconsistencia en el año de la fecha del evento *vis a vis* la fecha de la presentación de la querella 1 de agosto de 2022.

del DACO en la vista administrativa por entender que la expresión "(...) los desperfectos que presenta la pintura en los tapalodos *sugieren algún tipo de descuadre de estas piezas posiblemente a causa de un impacto sufrido en la parte frontal del vehículo (...)"* no se apoyaba en la inspección visual que realizó el mismo.

17. A pesar de que, *en cuanto al alegado choque de la unidad, el Técnico no pudo hacer ninguna conclusión en su informe, por no tener las facilidades disponibles para una inspección profunda,* concluyó que lo que comprende las partes que presentaban ruido en el tren delantero fueron corregidas en garantía por Tocars Toyota; el aire acondicionado no enfría; los tapalodos presentan desperfectos en la pintura *"como de contacto* con el bonete del vehículo en las esquinas", entendiendo que esto se debe a algún tipo de descuadre en esa pieza. Además, notó que, los descuadres se deben a que se movió la pieza y no se instaló como es debido o, *tal vez,* algún golpe que recibió.

19. El Querellante tuvo que esperar entre la primera y segunda consulta con Tocars para poder recolectar el dinero y que le realizaran el *diagnóstico completo.* Para ese entonces le informaron lo que le encontraron y el costo del mismo, le comentaron que el aire estaba dañado, que el condensador estaba roto, los soportes del radiador o batería estaban mal instalados, que el vehículo había sido chocado y que era muy probable que la razón del por qué eso estaba dañado era por el accidente del vehículo.

20. La parte Querellante no fue informado que el carro había sido chocado y si hubiese sabido que el carro había sido chocado no lo hubiese comprado. No sufrió accidente. Además, indica no poseer los ingresos para pagar el arreglo.

21. Querellante indica no haber pagado pronto, ni tener reclamación alguna contra Popular.

22. Querellante se sostiene en su solicitud de remedio: resolución de contrato, devolución de contraprestaciones y daños.

23. Al Departamento le mereció entero crédito el testimonio del Querellante.

(Énfasis y cursivas en el original).

Basado en dichas determinaciones de hechos, el DACo mantuvo las conclusiones de derecho y otorgó los mismos remedios consignados en la resolución original.

Inconforme, el 31 de octubre de 2023, Avilés Auto acudió ante este foro apelativo mediante recurso de revisión administrativa y en auxilio de jurisdicción, solicitó la paralización de los efectos de la

resolución recurrida. Mediante resolución del 8 de noviembre de 2023, este tribunal intermedio paralizó los efectos de la resolución recurrida.

En su recurso, Avilés Auto formuló los siguientes señalamientos de error:

a. ERRÓ EL DACO AL CONCLUIR QUE SE CONFIGURA LA ACCIÓN DE SANEAMIENTO POR VICIOS OCULTOS Y NO CONSIDERAR EL PLANTEAMIENTO DE PRESCRIPCIÓN DE DICHA CAUSA DE ACCIÓN.

b. ERRÓ EL DACO AL DESCARTAR LA OPINIÓN PERICIAL DE SU PROPIO PERITO Y LLEGAR A CONCLUSIONES QUE NO ESTÁN BASADAS EN LA EVIDENCIA RECIBIDA EN LA VISTA ADMINISTRATIVA.

c. ERRÓ EL DACO AL IMPONER HONORARIOS DE ABOGADO EN AUSENCIA DE TEMERIDAD.

Avilés Auto presentó con su recurso una transcripción de la vista administrativa celebrada el 23 de junio de 2023. El 10 de noviembre de 2023, emitimos *Resolución* en la que concedimos un término a la parte recurrida para presentar sus objeciones a la transcripción presentada, bajo apercibimiento que, de no presentar sus objeciones, la transcripción sería acogida según presentada. Transcurrido el término sin que la parte recurrida se expresara en torno a la transcripción de la vista, acogemos la transcripción presentada por Avilés Auto.

El 29 de noviembre de 2023, la parte recurrida presentó su alegato en oposición. Con el beneficio de la comparecencia de las partes y de la transcripción de la prueba oral, estamos en posición de resolver.

**II.**

**A.**

Es norma firmemente establecida que los tribunales apelativos han de conceder gran consideración y deferencia a las decisiones de los organismos administrativos. Ello, dado que las agencias administrativas cuentan con vasta experiencia y

conocimiento especializado en cuanto a los asuntos que les han sido encomendados.[31]

Como resultado, la decisión de una agencia administrativa gozará de una presunción de legalidad y corrección que será respetada, siempre que la parte que la impugna no produzca evidencia suficiente para rebatirla.[32] Así, en cuanto a las determinaciones de hecho que realiza una agencia, el Tribunal Supremo ha resuelto que los tribunales revisores tienen que sostenerlas si se encuentran respaldadas por evidencia suficiente que surja del expediente administrativo al ser considerado en su totalidad.[33] Por evidencia sustancial se entiende "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[34]

Por lo tanto, la parte afectada deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial.[35] En fin, el tribunal debe limitar su intervención a evaluar si la determinación de la agencia es razonable, ya que se persigue evitar que el tribunal revisor sustituya el criterio de la agencia por el suyo.[36]

Por otro lado, respecto a las conclusiones de derecho, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, señala que éstas pueden ser revisadas en todos sus aspectos.[37] Ahora bien, lo anterior "no implica que los tribunales revisores tienen la libertad absoluta de descartar

---

[31] *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839 (2021), citando a *OCS v. Universal*, 187 DPR 164, 178 (2012); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800 (2012); *Pagán Santiago, et al. v. ASR*, 185 DPR 341, 358 (2012).
[32] *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012).
[33] *Pacheco v. Estancias*, 160 DPR 409, 432 (2003). Véase, además, Sec. 4.5 de la LPAU, 3 LPRA § 9675.
[34] *Rolón Martínez v. Superintendente*, 201 DPR 26, 36 (2018); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Otero v. Toyota*, 163 DPR 716, 728-729 (2005).
[35] *Otero v. Toyota*, supra, pág. 728.
[36] *Íd.*
[37] Sec. 4.5 de la LPAU, 3 LPRA § 9675.

libremente las conclusiones e interpretaciones de la agencia".[38] Consecuentemente, cuando un tribunal llega a un resultado distinto al de la agencia, éste debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba.[39] Dicho de otro modo, "[e]l tribunal podrá sustituir el criterio de la agencia por el propio solo cuando no pueda hallar una base racional para explicar la decisión administrativa".[40]

Por consiguiente, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales.[41]

**B.**

La Ley Núm. 5 del 23 de abril de 1973, según enmendada, conocida como *Ley Orgánica del Departamento de Asuntos del Consumidor*, 3 LPRA § 341, *et seq.*, delegó en el DACo la responsabilidad de vindicar e implementar los derechos del consumidor. Para ello, "se estableció en la agencia una estructura de adjudicación administrativa 'con plenos poderes para adjudicar

---

[38] *Otero v. Toyota*, supra, pág. 729.
[39] *Íd.*
[40] *Íd.*
[41] *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021); *Torres Rivera v. Policía de Puerto Rico,* 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 712, 744-745 (2012).

las querellas que se traigan ante su consideración y conceder los remedios pertinentes conforme a derecho'".[42]

A su vez, la Ley Núm. 7 del 24 de septiembre de 1979, según enmendada, *Ley de Garantías de Vehículos de Motor* (Ley de Garantías de Vehículos de Motor), 10 LPRA § 2051, *et seq.*, fue promulgada con el fin de "garantizar la seguridad, salud y bienestar de la comunidad evitando que vehículos de motor defectuosos, de gran potencialidad de daño al conductor, ocupantes y otros, transiten por las vías públicas".[43]

Asimismo, para proteger a los consumidores de vehículos de motor e imponerles a los fabricantes o manufactureros, y a los distribuidores y vendedores, como eslabones en la cadena de distribución, la responsabilidad y obligación de brindarle a los consumidores el servicio de garantía de fábrica, independientemente del lugar donde el consumidor haya adquirido dicho vehículo.[44]

En virtud de ello, el Secretario del DACo promulgó el *Reglamento de Garantías de Vehículos de Motor*, Reglamento Núm. 7159 de 6 de julio de 2006 (Reglamento Núm. 7159)[45]. El propósito de este Reglamento es proteger a los consumidores que invierten en la adquisición de vehículos de motor, y procurar que estos sirvan para los propósitos para los cuales fueron adquiridos, y que tengan las condiciones mínimas necesarias para garantizar la protección de la vida y propiedad, así como prevenir las prácticas ilícitas en la venta de vehículos de motor en Puerto Rico. [46] En específico, la Regla 4 establece que el reglamento deberá interpretarse liberalmente a favor del consumidor.

---

[42] *Ortiz Rolón v. Soler Auto Sales, Inc., et al.,* 202 DPR 689, 696 (2019); 3 LPRA § 341e(d). (Énfasis nuestro).
[43] Exposición de Motivos de la *Ley de Garantías de Vehículos de Motor.*
[44] *Íd.*
[45] Cabe señalar que algunas reglas del Reglamento Núm. 7159 fueron enmendadas por el Reglamento Núm. 7920 de 3 de septiembre de 2010, por lo cual de aplicar alguna regla enmendada por dicho reglamento así lo haremos constar.
[46] Regla 2 del Reglamento Núm. 7159.

En lo pertinente, la Regla 26.1 y 26.2 del Reglamento Núm. 7159, disponen lo siguiente:

**Regla 26.1:** Se prohíbe vender un vehículo de motor usado sin garantía.

**Regla 26.2:** Todo vendedor de vehículos de motor usados, concederá garantía, en piezas y mano de obra. Esta garantía será a base del millaje recorrido y según la siguiente escala:

a)   Hasta 36,000 millas – cuatro (4) meses o cuatro mil (4,000) millas, lo que ocurra primero.

b)   Más de 36,000 millas y hasta 50,000 millas – tres (3) meses o tres mil (3,000) millas, lo que ocurra primero.

c)   Más de 50,000 millas y hasta 100,000 millas – dos (2) meses o dos mil (2,000) millas, lo que ocurra primero.

Por otra parte, la Regla 30 dispone acerca de la información que todo vendedor de vehículo de motor usado deberá ofrecer al consumidor. La referida regla, lee como sigue:

30.1-Todo vendedor estará obligado a notificarle por escrito al consumidor si el vehículo de motor usado que interesa ha sido usado como taxi, vehículo de transportación pública, vehículo de servicio público, de alquiler, de demostración o cualquier otra finalidad que conlleve uso regular o excesivo.

30.2-Todo vendedor de un vehículo de motor usado, el cual haya sido impactado y reparado posteriormente, deberá indicarlo verbalmente y notificarlo por escrito al consumidor en el contrato de compraventa.

Además, la Regla 37 del referido reglamento establece que nada de lo dispuesto en él limita el derecho del consumidor a ejercer cualquier acción que le reconozcan las leyes del Estado Libre Asociado de Puerto Rico, así como las acciones de saneamiento por evicción o vicios ocultos, y la acción redhibitoria que reconoce el Código Civil para los contratos de compraventa.[47]

### C.

El Código Civil de Puerto Rico, Ley Núm. 55-2020, establece la obligación de saneamiento por evicción o vicios ocultos. Al respecto, el Artículo 1261 del referido código establece lo siguiente:

---

[47] *Polanco v. Cacique Motors,* 165 DPR 156, 165 (2005).

> La persona que transmite un bien a título oneroso responde por evicción y por los defectos ocultos del bien, aunque lo ignorase. Igual obligación se deben entre sí quienes dividen bienes comunes. La persona obligada responde ante el adquirente y quienes lo sucedan en el derecho por cualquier causa y título.[48]

Por otro lado, el Artículo 1263 dispone que el adquirente puede optar por reclamar la subsanación o reparación de los defectos, la entrega de un bien equivalente o resolver total o parcialmente el contrato.[49] Ahora bien, dicho artículo dispone además que la resolución total solo procederá si la evicción o el defecto recaen sobre un aspecto determinante para la adquisición del bien.[50] También que la misma regla aplica en caso de adquisición conjunta de varios bienes. Para los casos de evicción, el referido artículo establece que el adquirente también tiene derecho al resarcimiento de los daños sufridos, salvo que haya actuado con negligencia. En caso de vicio redhibitorio, el adquirente solo tendrá derecho al resarcimiento de los daños sufridos si el transmitente actuó con dolo.[51] En ambos supuestos, si la adquisición se hizo a riesgo del adquirente o en subasta judicial o administrativa, no se responde por el resarcimiento de los daños sufridos y de los gastos que haya incurrido para sanear el título.[52]

En lo relacionado al vicio redhibitorio, el Artículo 1267 del Código Civil lo define como el defecto oculto en el bien transmitido a título oneroso, existente al tiempo de la adquisición, que hace impropio al bien para su destino o disminuye de tal modo su utilidad que, de haberlo conocido, el adquirente no lo habría adquirido o habría dado menos por él.[53] Dicho artículo añade que también se considera vicio redhibitorio aquel especialmente acordado como tal por las partes, aquel que el transmitente garantiza que no existe, y

---

[48] 31 LPRA § 9851.
[49] 31 LPRA § 9853.
[50] *Íd.*
[51] *Íd.*
[52] *Íd.*
[53] 31 LPRA § 9871.

la ausencia de la calidad convenida.[54]  El referido artículo establece, además, que el transmitente responde aun cuando ignore la existencia del vicio redhibitorio.[55]

Por otra parte, el Artículo 1268 dispone que no es vicio redhibitorio el que el adquirente conoce al momento de la transmisión o el que pudo haber conocido conforme a sus aptitudes.[56]  Para juzgar la aptitud del adquirente, el citado artículo dispone que debe atenderse el deber que tiene de obrar con prudencia y pleno conocimiento de las circunstancias.[57]

Respecto al término prescriptivo para instar una causa de acción por vicio redhibitorio, el Artículo 1270 establece que las acciones para reclamar por vicios redhibitorios prescriben a los seis (6) meses, contados a partir de la entrega del bien transmitido, o desde la última gestión de inteligencia entre las partes.[58]  Al respecto, en *Casa Jaime Corp. v. Castro*[59], el Tribunal Supremo señaló que dicha acción no se extingue automáticamente a los seis meses en todos los casos.[60]  Es por esto que nuestro Alto Foro aplicó las doctrinas generales del Código Civil sobre la prescripción extintiva, determinando que las constantes reclamaciones y contestaciones de los interesados interrumpen la prescripción.  Por tanto, "dicho plazo comienza a transcurrir no desde la fecha de perfección del contrato, sino desde el momento en que cesan las gestiones de inteligencia entre las partes".[61]  Sin embargo, no se puede perder de perspectiva que estas gestiones que interrumpen el término tienen que presentarse dentro del plazo de seis meses, a partir de la entrega de la cosa.

---

[54] *Íd.*
[55] *Íd.*
[56] 31 LPRA § 9872.
[57] *Íd.*
[58] 31 LPRA § 9874.
[59] 89 DPR 702 (1963).
[60] *Íd.,* pág. 704.
[61] *Polanco v. Cacique Motors, supra,* pág. 166.

Para que proceda una acción de saneamiento por vicios ocultos o redhibitorios, se tienen que cumplir los siguientes requisitos: (1) que la cosa adolezca de un vicio oculto, que no sea conocido por el adquirente al momento de la compraventa; (2) que el vicio sea de tal gravedad que haga la cosa impropia para el uso al que se destina o disminuya notablemente su valor de manera que el comprador no habría adquirido la cosa de haberlo conocido; (3) el defecto debe ser preexistente a la venta; y, (4) la acción debe ejercitarse dentro del plazo legal de seis meses contados desde la entrega de la cosa vendida.[62]

Además, en estos casos el Código Civil dispone que el comprador puede optar entre: (1) la acción redhibitoria, que coloca a las partes en la condición que se encontraban antes de la compraventa, mediante la restitución de las prestaciones, o (2) la reducción del precio en una cantidad proporcional, a juicio de peritos.[63]

Ahora bien, para que proceda una acción redhibitoria, los vicios tienen que ser de tal naturaleza que la imperfección o defecto haga imposible el uso del objeto, o que el uso se vea disminuido al extremo de mermar considerablemente la utilidad o el valor de la cosa para el propósito para el cual fue adquirida.[64]

En acciones por vicios ocultos, cuando el objeto de la compraventa es un vehículo de motor, hay que determinar si los defectos de que adolece el automóvil constituyen un vicio oculto, sea redhibitorio o cuantiminoso.[65]

Por lo general, el comprador de un vehículo de motor no es un perito de mecánica automotriz. Requerirle a un comprador, lego en materia de mecánica, que pruebe exactamente qué piezas son las

---

[62] *Id.*
[63] *Polanco v. Cacique Motors*, supra.
[64] *Domínguez v. Caguas Expressway Motors*, 148 DPR 387, 397 (1999).
[65] *Polanco v. Cacique Motors,* supra*, pág. 159.

defectuosas sería imponerle una carga de prueba injusta.[66] Asimismo, en cuanto al peso de la prueba sobre la existencia de vicios ocultos, el Tribunal Supremo de Puerto Rico ha opinado que "el comprador de un vehículo de motor –sea éste nuevo o usado– al reclamar por vicios ocultos, sólo estará obligado a demostrar que el automóvil funcionaba normalmente al momento de la compra y que el vendedor no quiso o no pudo corregir el defecto, a pesar de haber tenido la oportunidad de hacerlo".[67]

**D.**

La Sección 3.13 (e) de la Ley de Procedimiento Administrativo Uniforme (LPAU), 3 LPRA § 9653, dispone que "[l]as Reglas de Evidencia no serán aplicables a las vistas administrativas, pero los principios fundamentales de evidencia se podrán utilizar para lograr una solución justa, rápida y económica del procedimiento". Así que, los procedimientos administrativos son de naturaleza flexible, en los que rige una norma liberal en la aplicación de las reglas con el único propósito de descubrir la verdad.[68]

En ese sentido, y como regla general, en nuestro ordenamiento jurídico el peso de la prueba en toda acción civil recae sobre la parte que resultaría vencida de no presentarse evidencia por alguna de las partes.[69] Cónsono con lo anterior, la obligación de presentar evidencia recae primeramente sobre la parte que sostiene la afirmativa en el asunto en controversia.[70] Por ello, la obligación de presentar evidencia y persuadir al juzgador de la existencia de los elementos esenciales de una reclamación recae sobre el demandante.[71] La determinación del juzgador se hará

---

[66] *Íd.*
[67] *Íd.*
[68] *Otero v. Toyota*, 163 DPR 716, 732 (2005).
[69] Regla 110(A) de Evidencia, 32 LPRA Ap. VI R. 110(A).
[70] Regla 110(B) de Evidencia, 32 LPRA Ap. VI R. 110(B).
[71] *Rivera Figueroa v. The Fuller Brush Co.,* 180 DPR 894, 913 (2011).

mediante la preponderancia de la prueba a base de criterios de probabilidad.[72]

**E.**

Conforme establece el Código Civil de Puerto Rico, Ley Núm. 55-2020, el contrato es el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones.[73] A tenor con esto, las partes pueden establecer las cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarias a las leyes, la moral ni al orden público.[74] Una vez las partes prestan su consentimiento, estas quedarán obligadas al cumplimiento de la obligación pactada, ya que "[l]o acordado en los contratos tiene fuerza de ley entre las partes".[75]

Además, el Código Civil establece que no existe contrato hasta tanto las partes manifiestan su consentimiento sobre el objeto y la causa.[76] En virtud de ello, para que un contrato sea válido, se requiere que concurran los siguientes tres (3) elementos esenciales: (1) consentimiento de los contratantes, (2) objeto cierto que sea materia del contrato, y (3) la causa de la obligación que se establezca.[77] La falta de alguno de ellos será causa de nulidad del contrato, y por tanto, inexistente en el orden jurídico.[78]

En cuanto al contrato de compraventa, el Código Civil dispone que, mediante este, la parte vendedora se obliga a transferir a la parte compradora el dominio de un bien, y esta a su vez se obliga a pagar un precio cierto.[79] En dicha transacción, una de las obligaciones de la parte vendedora es "garantizar al comprador que

---

[72] Regla 110(F) de Evidencia, 32 LPRA Ap. VI R. 110(F).
[73] Art. 1230 del Código Civil, 31 LPRA § 9751.
[74] Art. 1232 del Código Civil, 31 LPRA § 9753.
[75] Art. 1233 del Código Civil, 31 LPRA § 9754.
[76] Art. 1237 del Código Civil, 31 LPRA § 9771.
[77] *Aponte Valentín v. Pfizer Pharmaceuticals, LLC*, 208 DPR 263, 284 (2021).
[78] *Rosario Rosado v. Pagán Santiago*, 196 DPR 180, 188 (2016).
[79] Art. 1274 del Código Civil, 31 LPRA § 9941.

el bien vendido tiene las cualidades prometidas y que está libre de defectos que disminuyen o destruyen su valor o la aptitud para su uso ordinario o convenido".[80]

**F.**

La invalidez de un contrato es una sanción legal que, mediante una decisión judicial, priva a un negocio jurídico de sus efectos propios por adolecer de un vicio originario, esencial e intrínseco al acto.[81]

En lo relativo a las clases de invalidez, el negocio jurídico puede ser nulo o anulable. Es nulo si: (1) el objeto, la causa o el consentimiento son inexistentes; (2) el objeto o la causa son ilícitos; (3) carece de las formalidades exigidas por la ley para su validez; o (4) es contrario a la ley imperativa, la moral o el orden público. De otra parte, el negocio es anulable si: (1) el otorgante tiene incapacidad de obrar, (2) concurre algún vicio de la voluntad, o (3) el acto adolece de un defecto de forma no solemne.[82]

Los vicios de la voluntad son el error, el dolo, la violencia y la intimidación.[83] Si el vicio fue determinante para el otorgamiento del negocio jurídico, el acuerdo es anulable. La prueba de la existencia del vicio y su carácter incumbe a quien lo alega.[84]

Específicamente, el "dolo grave" se define como "la acción u omisión intencional por la cual una parte o un tercero inducen a otra parte a otorgar un negocio jurídico que de otra manera no hubiera realizado".[85] Por tanto, "constituye dolo callar sobre una circunstancia importante relacionada con el objeto del contrato".[86] Conforme lo anterior, no todo tipo de dolo produce la nulidad del contrato. Para que el dolo produzca la nulidad del contrato, deberá

---

[80] Art. 1287 del Código Civil, 31 LPRA § 9991.
[81] Art. 341 del Código Civil, 31 LPRA § 6311.
[82] Art. 342 del Código Civil, 31 LPRA § 6312.
[83] Art. 285 del Código Civil, 31 LPRA § 6191.
[84] Art. 286 del Código Civil, 31 LPRA § 6192.
[85] Art. 292 del Código Civil, 31 LPRA § 6211.
[86] *Bosques v. Echevarría*, 162 DPR 830, 836 (2004).

ser grave y no haber sido empleado por las dos partes contratantes.[87]  Si la acción u omisión no provoca la realización del negocio jurídico, el perjudicado puede reclamar los daños y perjuicios que sufra.[88]

En cambio, el dolo incidental no invalida el negocio jurídico, pero su autor debe indemnizar el daño causado.[89]  Esto es así, ya que este tipo de dolo no tiene una influencia decisiva en la esencia de la obligación.[90]  De hecho, en este tipo de casos existe la voluntad de contratar de la parte perjudicada, pero hay engaño en el modo en que se celebra el negocio jurídico.  Por lo cual, el contrato de todas formas se hubiera celebrado, pero no bajo las mismas condiciones.[91]

El Tribunal Supremo dispuso en *Colón v. Promo Motor Imports, Inc.,* supra, que independientemente del tipo de dolo que se alegue, corresponde a quien reclama dicha conducta la responsabilidad de la prueba.[92]  No obstante, esto no significa que el dolo debe establecerse de manera directa, ya que puede demostrarse mediante inferencia o por evidencia circunstancial.[93]  "La preparación académica, condición social y económica, y relaciones y tipo de negocios en que se ocupa una persona son factores de particular significación al determinar la existencia de dolo que anule su consentimiento".[94]

### III.

En su primer señalamiento de error, Avilés Auto alega que DACo incidió al concluir que se configuró una causa de acción de saneamiento por vicios ocultos y no considerar la defensa de prescripción en cuanto a dicha causa de acción.  Aduce que la causa

---

[87] *Íd.*
[88] Art. 292 del Código Civil, *supra.*
[89] Art. 294 del Código Civil, 31 LPRA § 6213.
[90] *Colón v. Promo Motor Imports, Inc.*, 144 DPR 659, 667 (1997).
[91] *Íd.*
[92] *Íd.,* pág. 668.
[93] *Íd.*, pág. 669.
[94] *Citibank v. Dependable Ins. Co., Inc.*, 121 DPR 503, 519 (1988), citando a *Miranda Soto v. Mena Eró,* 109 DPR 473, 478 (1980).

de acción de saneamiento se ejerció vencido el plazo legal de seis (6) meses dispuesto en la normativa aplicable. En otro extremo, indica que la prueba del querellante no estableció el cumplimiento de todos los requisitos que obligan al vendedor a proveer saneamiento por vicios ocultos. En específico, indicó que se incumplió con: (1) la exigencia de que el defecto fuese lo suficientemente grave como para hacer la cosa impropia para su uso o que disminuyera de tal forma su uso que de haberlo conocido el comprador no lo hubiera adquirido, y (2) que el defecto fuera preexistente a la venta.

Así, y en primer orden, nos corresponde determinar si Avilés Auto renunció a la defensa afirmativa de prescripción.

La Regla 6.3 de Procedimiento Civil, 32 LPRA Ap. V, enumera las distintas defensas afirmativas que puede levantar un demandado en su alegación responsiva, entre estas, la prescripción. La regla dispone que las defensas afirmativas deberán plantearse de forma clara, expresa y específica al responder a una alegación o se tendrán por renunciadas, salvo que la parte advenga en conocimiento de la existencia de esta durante el descubrimiento de prueba, en cuyo caso deberá hacer la enmienda a la alegación pertinente. Claro está, ello está sujeto a que se demuestre que la omisión no se debió a falta de diligencia.[95] De manera que, corresponde al demandado enmendar con premura su contestación a la demanda para incluir la defensa afirmativa que omitió aducir por desconocer que la tenía disponible cuando contestó la demanda.[96]

En el presente caso, surge del expediente que, en la querella original, presentada por el Sr. Cruz Rivera el 1 de agosto de 2022, éste reclamó que Avilés Auto no le informó que la unidad había sido

---

[95] *López v. J. Gus Lallande,* 144 DPR 774, 792 (1998); *Meléndez v. El Vocero de Puerto Rico,* 144 DPR 389, 399 (1997); *Epifanio Vidal, Inc. v. Suro,* 103 DPR 793, 794 (1975).
[96] *Conde Cruz v. Resto Rodríguez et al.,* 205 DPR 1043, 1064 (2020).

impactada y reparada previo a la compraventa y que el vehículo presentaba "daños ocultos". Señaló que, de haber sabido que el vehículo había sido chocado no lo hubiera comprado y que se sintió engañado por el *dealer*. En la contestación a esa querella, Avilés Auto no planteó la defensa de prescripción.

En la querella enmendada del 21 de abril de 2023, el Sr. Cruz Rivera incorporó una reclamación de nulidad por dolo. Es en contra de esta querella enmendada que Avilés Auto por primera vez planteó la defensa de prescripción, específicamente sobre la causa de acción por vicios ocultos.[97]

Claramente, la defensa de prescripción expuesta por Avilés Auto en la contestación a la querella enmendada contradice un hecho conocido desde la presentación de la querella original. Avilés Auto no demostró de qué documento o parte del descubrimiento de prueba surgía la defensa. Tampoco demostró circunstancia alguna que nos mueva a concluir que la omisión no se debió a su falta de diligencia.

Avilés Auto debió plantear la defensa de prescripción sobre la causa de acción de saneamiento por vicios ocultos en la primera oportunidad que tuvo para plantearla, esto fue, al presentarse la querella original. Al no hacerlo, dicha defensa se entiende renunciada. Además, la defensa de prescripción tampoco aplicaba a la causa de acción de nulidad por vicio en el consentimiento por dolo, pues el término prescriptivo de dicha causa de acción es de cuatro (4) años.[98] Por consiguiente, no erró la agencia recurrida al dejar de considerar la referida defensa en cuanto a la causa de acción de saneamiento por vicios ocultos. El primer señalamiento de error no fue cometido.

---

[97] Véase, *Contestación a querella enmendada,* Apéndice XII del recurso.
[98] Artículo 1203 del Código Civil de 2020, 31 LPRA § 9495.

No obstante, el que lleguemos a esta conclusión con relación a la renuncia de la defensa de prescripción sobre la causa de acción por vicios ocultos no dispone del presente recurso.

El planteamiento central que Avilés Auto trae ante nuestra consideración consiste en determinar si el DACo erró al decretar la nulidad del contrato de compraventa del vehículo de motor en controversia. En síntesis, alega que la prueba presentada no demostró que dicho *dealer* hubiera incurrido el dolo consistente en haber ocultado al Sr. Cruz Rivera que el auto fue impactado y reparado previo a la compraventa.

Por su parte, el Sr. Cruz Rivera sostiene que la prueba estableció que Avilés Auto nunca le informó de manera verbal y escrita que el vehículo hubiera sido chocado y reparado, razón por la cual la agencia actuó correctamente al decretar la nulidad del contrato por vicio del consentimiento.

Así pues, debemos determinar si el DACo erró al resolver que Avilés Auto incurrió en dolo al momento de la contratación, por no haber informado al Sr. Cruz Rivera que el vehículo de motor usado que estaba adquiriendo había sido impactado y posteriormente reparado.

Según mencionado, los tribunales debemos ser deferentes en torno a las decisiones administrativas, pero tal deferencia cederá cuando la determinación no esté basada en evidencia sustancial, cuando el ente administrativo haya errado en la aplicación de la ley y cuando la actuación resulte arbitraria, irrazonable e ilegal.

Conforme surge del expediente ante nuestra consideración, el **18 de junio de 2021**, el Sr. Cruz Rivera adquirió un vehículo de motor usado en Avilés Auto, con sobre 35 mil millas recorridas. El **18 de septiembre de 2021**, el Sr. Cruz Rivera notificó a Avilés Auto de unos ruidos extraños que realizaba el vehículo cada vez que giraba el guía para que revisaran dichos defectos. Ante la falta de

respuesta, el **10 de marzo de 2022** (aproximadamente siete meses después y 10 mil millas adicionales de uso), el Sr. Cruz Rivera llevó la unidad al taller de Tocars de Vega Baja. El diagnóstico reflejó que ambos ejes delanteros mostraban desgaste excesivo en las cajas de bolo ocasionando ruido al girar. El taller reemplazó ambos ejes corrigiendo así la condición. En cuanto al aire acondicionado, se diagnosticó que el "condensador [está] impactado en la parte baja ocasionando fuga y compresor con daño interno. Unidad no tiene los bracket de batería".

El **29 de abril de 2022**, el Sr. Cruz Rivera nuevamente llevó el vehículo a Tocars por ruidos en la parte frontal.[99] En esta ocasión, el diagnóstico realizado, encontró que el vehículo había sido impactado en la parte frontal y reparado con trabajo de hojalatería.[100]

Por otra parte, del informe presentado por el técnico de investigación del DACo se desprende que la inspección del vehículo se realizó en las instalaciones de Avilés Auto, las cuales no cuentan con un área de servicio, equipo ni herramientas para subir la unidad y desarmar lo necesario para poder realizar una inspección visual completa de esta. Así, a base de la inspección que pudo realizar, el técnico de investigación del DACo rindió su informe, del cual salta a la vista la siguiente opinión:

> Los desperfectos que presenta la pintura en los tapalodos **sugieren** algún tipo de descuadre de estas piezas **posiblemente** a causa de un impacto sufrido en la parte frontal del vehículo. (Énfasis nuestro).

Como nota a su opinión, el técnico añadió lo siguiente:

> [S]i se determinara pertinente realizar otra inspección del vehículo [...] [s]e sugiere por este que suscribe se lleve a cabo en el concesionario Tocars Toyota para poder contar con los equipos y herramientas aprobadas por Toyota y **de una forma segura corroborar los**

---

[99] Desde la última visita a Tocars en marzo del 2022, el vehículo recorrió aproximadamente 2 mil millas adicionales. (49,844 millas)
[100] Este segundo diagnóstico fue realizado por el mismo técnico que realizó el de marzo de 2022.

**hallazgos de Tocars Toyota por parte de este departamento**. (Énfasis nuestro).

Durante su testimonio, el técnico de investigación declaró que en las instalaciones en las que se realizó la inspección de la unidad objeto de la querella, no había disponibilidad de un pino para subir el vehículo y hacer una inspección completa. Por tal razón, testificó que **no llegó a conclusión alguna en su informe**.[101] Respecto a los resultados de la inspección consignados en el documento, específicamente en la Parte IV, último punto, en el que indicó que "los tapalodos presentan desperfectos en la pintura como de contacto con el bonete del vehículo en las esquinas", declaró que ello podía deberse a varias cosas. Así, expresó que "en algún momento se movió esa pieza y se volvió a instalar y no se instaló como fue debido. Tal vez algún golpe que recibió".[102] De hecho, en respuesta a las preguntas de la representación legal de Avilés Auto, el técnico de investigación del DACo respondió que, tal y como había descrito en las observaciones de su informe, ante la falta de equipo en el lugar de la inspección, **no pudo detectar el supuesto choque** que presuntamente causó los desperfectos de la unidad.[103]

A pesar de los hallazgos del perito de la agencia, en la resolución recurrida, el DACo determinó que el auto fue impactado previo a ser adquirido por el querellante y que Avilés Auto incurrió en dolo que vició el consentimiento del Sr. Cruz Rivera al ocultarle que la unidad había sido chocada y reparada previo a la celebración del contrato. Incidió.

Luego del análisis de la transcripción de la prueba oral y de los documentos de nuestro expediente, concluimos que la determinación del DACo sobre la existencia del dolo no está sostenida por la prueba desfilada. Según la prueba desfilada, el

---

[101] Transcripción de la vista administrativa incluida en el apéndice del recurso, pág. 6.
[102] *Íd.,* pág. 7.
[103] *Íd.,* pág. 10.

técnico del DACo admitió que, de la inspección que realizó, no podía precisar o corroborar si, en efecto, el vehículo había recibido el supuesto impacto frontal detectado por Tocars. Así, ante la falta de una determinación concluyente por parte del perito de la propia agencia, DACo no debió concluir que el vehículo sufrió un impacto frontal previo a la compra, basándose solamente en unos desperfectos de pintura y descuadre de los guardalodos y bonete que pudieron obedecer a otros factores, tal y como expresó el técnico del DACo. Además, salta a la vista que, del expediente no surge que el Sr. Cruz Rivera detectara los desperfectos de pintura y el descuadre del guardalodos y bonete al momento de adquirir la unidad. Tampoco surge que, en ese momento, el Sr. Cruz Rivera notificara dichos desperfectos a Avilés Auto, ni que discutiera dicha inquietud cuando, tres meses posteriores a la compra, llevó el vehículo para el cambio de aceite y filtro y sustitución de gomas.

Siendo así, el querellante no demostró que, al momento de la venta, Avilés Auto tuviera conocimiento del supuesto impacto previo del vehículo. Por tanto, tampoco puede concluirse que Avilés Auto ocultó tal hecho para lograr la transacción con el querellante. En este punto resaltamos que el ruido descrito por el querellante, al girar el volante se debió a un "**desgaste excesivo**" de ambos ejes delanteros, según consignado por Tocars Toyota y reparado por garantía. Para ese entonces la unidad contaba con aproximadamente 45,724 millas recorridas.

En fin, al examinar los documentos ante nuestra consideración, concluimos que no medió dolo en la contratación que produjera la nulidad del contrato de compraventa y la restitución de las prestaciones relacionadas. Así pues, concluimos que a Avilés Auto le asiste la razón en su tercer señalamiento de error.

Por último, y en consideración a la conclusión a la que hemos llegado, se elimina la partida impuesta a Avilés Auto por concepto

de honorarios de abogado. Dicha parte, lejos de actuar de forma temeraria al litigar -actuado con terquedad y desprovista de fundamentos- presentó reclamaciones válidas que, de hecho, hemos resuelto a su favor.

En resumen, al concluir que no medió dolo en la contratación, revocamos la resolución recurrida y desestimamos la querella instada por el Sr. Cruz Rivera. Por tanto, los contratos de compraventa, financiamiento y relacionados continúan en pleno vigor.

**IV.**

Por los fundamentos expresados, revocamos la resolución recurrida y desestimamos la querella del presente caso. Por tanto, los contratos de compraventa, financiamiento y relacionados continúan en pleno vigor. Dejamos sin efecto la paralización decretada por este Tribunal mediante resolución emitida el 8 de noviembre de 2023.

**Notifíquese.**

Lo acuerda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones